**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **MIDWEST CHRISTIAN VILLAGES, INC.** *et al.*,[1] | Case No. 24-42473-659 |
| | (Jointly Administered) |
| **Debtors.** | Re: Docket No. 144 |

**DEBTORS' OBJECTION TO MOTION OF VICTORIA L. HUFFSTUTLER AS
EXECUTOR OF THE ESTATE OF FRED A. HUFFSTUTLER, DECEASED FOR
RELIEF FROM THE AUTOMATIC STAY**

The above-captioned debtors and debtors-in-possession (the "Debtors"), by and through their counsel, hereby object (the "Objection") to the *Motion of Victoria L. Huffstutler as Executor of the Estate of Fred A. Huffstutler, Deceased For Relief From the Automatic Stay* [Docket No. 144] (the "Motion"). In support of this Objection, the Debtors respectfully state as follows:

---

[1] The address of the Debtors headquarters is 2 Cityplace Dr, Suite 200, Saint Louis, MO 63141-7390. The last four digits of the Debtors' federal tax identification numbers are: (i) Midwest Christian Villages, Inc. [5009], (ii) Hickory Point Christian Village, Inc. [7659], (iii) Lewis Memorial Christian Village [3104], (iv) Senior Care Pharmacy Services, LLC [1176], (v) New Horizons PACE MO, LLC [4745], (vi) Risen Son Christian Village [9738], (vii) Spring River Christian Village, Inc. [1462], (viii) Christian Homes, Inc. [1562], (ix) Crown Point Christian Village, Inc. [4614], (x) Hoosier Christian Village, Inc. [3749], (xi) Johnson Christian Village Care Center, LLC [8262], (xii) River Birch Christian Village, LLC [7232], (xiii) Washington Village Estates, LLC [9088], (xiv) Christian Horizons Living, LLC [4871], (xv) Wabash Christian Therapy and Medical Clinic, LLC [2894], (xvi) Wabash Christian Village Apartments, LLC [8352],(xvii) Wabash Estates, LLC [8743], (xviii) Safe Haven Hospice, LLC [6886], (xix) Heartland Christian Village, LLC [0196], (xx) Midwest Senior Ministries, Inc. [3401]; (xxi) Shawnee Christian Nursing Center, LLC [0068]; and (xxii) Safe Haven Hospice, LLC [6886].

1

**PRELIMINARY STATEMENT**

1.      The Motion is premised on a fundamental misunderstanding of the operative facts and a flawed interpretation of the applicable law.  Specifically, the Motion incorrectly is based on the assumption that (i) Victoria L. Huffstutler as Executor of the Estate of Fred A. Huffstutler, Deceased (the "Movant") has a present right to payment under the applicable Caring Communities Policy,[2] attached hereto as **Exhibit A**, and (ii) that the Debtors' insurer, Caring Communities, both has a duty to defend under the Caring Communities Policy and has assumed the defense of the Movant's claim.  As explained below, the Movant is wrong on both counts and the Motion must be denied.

2.      The Movant seeks stay relief to continue her pursuit of a state court personal injury action against Debtor Lewis Memorial Christian Village (the "Debtor-Defendant"), asserting that any recovery against the Debtor-Defendant would be sought from insurance proceeds only.  However, as described more fully below, the Movant is only entitled to recover insurance proceeds once the $250,000 self-insured retention ("SIR") is exhausted under the Debtors' Caring Communities Policy.

3.      Moreover, under the terms of the Caring Communities Policy, Caring Communities has no duty to defend against the Movant's claim nor has Caring Communities voluntarily agreed to furnish or otherwise furnished a defense in the state court action to date.  Instead, the Debtor-Defendant is required to furnish its own defense against the Movant's claim.  Accordingly, prior to the Petition Date, the Debtor-Defendant selected and paid for its own counsel to defend against the Movant's claim.  The Debtors' estates do not now have the resources to continue to defend against the Movants' claim in state court.

---

[2] As used herein, the term "Caring Communities Policy" refers to the Liability Insurance Policy issued by Caring Communities as policy # CCRRRG-0067-24.

4. As a result, if the automatic stay were to be lifted, the Debtors would have to choose between expending estate resources to defend the lawsuit and not defending the lawsuit at all, risking the entry of a potentially large default judgment. Accordingly, the Debtors would be severely prejudiced if the automatic stay were to be lifted.

5. Conversely, the Movant would suffer little, if any, prejudice if the stay were to remain in place. There is no guarantee that Movant's claim will exceed the SIR and there is no reason to treat Movant's general unsecured claim differently from other unliquidated unsecured claims in these cases. Any prejudice to the Movant is greatly outweighed by the prejudice that would result to the Debtors if the stay is lifted.

6. For these reasons, the Movant fails to set forth any "extraordinary circumstances" constituting "cause" to lift or modify the automatic stay under § 362(d)(1) of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), and the Motion should be denied.

## BACKGROUND

A. **General Background**

7. On July 16, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court").

8. The Debtors continue in the operation and management of their business as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. An official committee of unsecured creditors (the "Committee") has been appointed in the chapter 11 cases. No trustee or examiner has been appointed in these chapter 11 cases.

9. A detailed description of the Debtors' business and the events leading up to the filing of these chapter 11 cases can be found in the *Declaration of Kathleen (Kate) Bertram in*

*Support of the Debtors' Chapter 11 Petition and First Day Motions* [Docket No. 3], incorporated by reference herein.

10. The Debtors filed these chapter 11 cases to pursue one or more going concern sales and/or going concern affiliates for each of their facilities.

### B. Movant's Alleged Claims

11. The Movant's claims are based on certain events which allegedly occurred in April 2020 while Fred A. Huffstutler was under the nursing home care of the Debtor-Defendant, allegedly leading to his death on or about April 27, 2020.

12. The Movant was later appointed as Executor of the Estate of Fred A. Huffstutler and, on April 13, 2022, filed her Complaint (the "Complaint," a copy of which was attached to the Motion as Exhibit A) in that certain state court cause of action for negligence and personal injury against the Debtor-Defendant in the Circuit Court, Seventh Judicial Circuit, Sangamon County, Illinois (the "State Court"), in the case styled *Victoria L. Huffstutler as Executor of the Estate of Fred A. Huffstutler, deceased, Plaintiff vs. Lewis Memorial Christian Village, an Illinois Corporation, a/k/a Christian Horizon, Defendant*, bearing Case No. 2022LA000061 (the "Civil Suit").

13. The Movant asserts that "[u]pon information and belief, Defendant-Debtor is covered by a general liability insurance policy and/or policies, providing coverage for defense and liability expenses. It is further believed that Debtor's insurance coverage from this insurance policy and/or policies amounted to aggregate limits of $3,000,000.00." Motion, ¶ 7.

14. On August 14, 2024, the Movant filed the Motion, seeking relief from the automatic stay so that the Movant may continue the Civil Suit and to recover any final judgment against the Debtors solely from insurance proceeds. Motion, ¶ 8.

15. The Movant further clarifies, "[h]owever, to the extent that Defendant-Debtor, or any other Debtor, is/are self-insured and/or to the extent that any recovery in the Civil Suit is in excess of the insurance policy and/or policies limits, said self-insured liability and/or excess recovery shall be filed as an amended Claim against the Defendant-Debtor's and/or any other Debtor's bankruptcy estate(s)." Motion, ¶ 10.

    **C.**    **Additional Background**

16. In connection with the Caring Communities Policy in place for the event in question, there exists a self-insured retention ("SIR") in the amount of $250,000. As of the Petition Date, the SIR has only been exhausted in the amount of approximately $50,000 for defense costs against Movant's claims. Accordingly, any judgment awarded to Movant based on the Civil Suit would result in the Movant receiving a general unsecured claim up to the amount of the unexhausted SIR before any insurance proceeds could be accessed by the Movant.

17. Moreover, Caring Communities has no duty to defend against the Movant's claim based on the terms of the Caring Communities Policy. Specifically, the Caring Communities Policy provides: "Except as may otherwise be provided in this POLICY, this is a reimbursement POLICY for DAMAGES and CLAIM EXPENSES paid by YOU, or on YOUR behalf, and WE will have no duty to assume the charge, defense, investigation, appeal, or settlement of any CLAIM." Caring Communities Policy, § VII.D. To date, Caring Communities has not furnished any defense against the Movant's claim or otherwise provided the Debtors with any assurances that a defense will be voluntarily provided.

18. Instead, the Debtors hired and paid for defense counsel to defend against the Movant's claim to date. If the defense costs and liability incurred with respect to the Civil Suit

exceed the SIR under the Caring Communities Policy, the Debtors may then seek reimbursement from Caring Communities of those defense costs and liabilities which exceed the SIR.

19. As a result, if the automatic stay were to be lifted and the Civil Suit proceeds, the Debtors would have to proceed as a self-insured defendant and would either have to use estate resources—which the Debtors' estates do not have—to pay defense costs or allow the Civil Suit to proceed without a defense.

## **OBJECTION**

20. The automatic stay set forth in § 362 of the Bankruptcy Code "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his [or her] creditors." *In re Vierkant*, 240 B.R. 317, 320 (B.A.P. 8th Cir. 1999); s*ee also Midlantic Nat'l Bank v. N.J. Dep't of Env't. Prot*., 474 U.S. 494, 503 (1986). The automatic stay:

> stops all collection efforts, all harassment, and all foreclosure actions . . . . It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove the debtor into bankruptcy . . . . The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property, and those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally, and a race by creditors for the debtor's assets undermines this purpose.

*In re Vierkant*, 240 B.R. at 320.

21. Not only does the automatic stay prevent disparate actions against debtors and protect creditors in a manner consistent with the bankruptcy goal of equal treatment, but it is also designed "to protect creditors by preventing a race for the debtor's assets." *In re ML Barge Pool VII Partners-Series A*, 98 B.R. 957, 958 (E.D. Mo. 1989); *see also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1074 (3d Cir. 1992) ("designed to replace the 'unfair race to

the courthouse' with orderly liquidation that treats all creditors equally.") (internal citations omitted); *True Health Diagnostics LLC v. Azar, II* (*In re THG Holdings LLC*), 604 B.R. 154, 160 (Bankr. D. Del. 2019), appeal dismissed, No. 19-11689 (JTD), 2020 WL 1493622 (D. Del. Mar. 27, 2020) ("Clearly, the stay is designed to halt all collection efforts in order to allow the debtor time to reorganize."); *Fid. Mortg. Invs. v. Camelia Builders, Inc.* (*In re Fid. Mortg. Invs.*), 550 F.2d 47, 55 (2d Cir. 1976) ("The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another.").

22. Section 362 of the Bankruptcy Code prevents "creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding." *AP Indus., Inc. v. SN Phelps & Co.* (*In re AP Indus., Inc.*), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) (citing *In re Colin, Hochstin Co.*, 41 B.R. 322, 325 (Bankr. S.D.N.Y. 1984)).

    A.    **<u>The Movant Fails to Establish "Cause" To Lift The Automatic Stay</u>**

23. Section 362(d)(1) of the Bankruptcy Code provides relief from the automatic stay only upon a showing of "cause." 11 U.S.C. §362(d)(1). Cause under § 362(d)(1) of the Bankruptcy Code has been defined as "any reason whereby a creditor is receiving less than [its] bargain from a debtor and is without a remedy because of the bankruptcy proceeding." *In re Martens*, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005). "In making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the Debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court." *In re Blan*, 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999).

24. Although the Eighth Circuit has not imposed a firm standard for determining whether cause exists to lift the automatic stay to permit an action to proceed in another forum, the Bankruptcy Appellate Panel for the Eighth Circuit and other courts in the Eighth Circuit have balanced the following five factors when making this assessment: (1) judicial economy; (2) trial readiness; (3) resolution of preliminary bankruptcy issues; (4) the movant's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors. *In re Blan*, 237 B.R. at 739; *In re Wiley*, 288 B.R. 818, 822 (B.A.P. 8th Cir. 2003); *In re Wintroub*, 283 B.R. 743, 745 (B.A.P. 8th Cir. 2002); *Bee Jay's Hairstyling Acad., Inc. v. Yarbrough*, 540 B.R. 647, 662 (Bankr. E.D. Ark. 2015); *In re Living Hope Southeast, LLC*, 505 B.R. 237, 243 (Bankr. E.D. Ark. 2014); *QA3 Fin. Corp. v. Catlin Specialty Ins. Co.*, 2012 WL 297150 (D. Neb. 2012); *In re Tovar*, 2012 Bankr. LEXIS 4777 at *8 (Bankr. N.D. Iowa 2012).

25. These factors are consumed in the following more extensive list of factors enumerated in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990) (the "Sonnax Factors"), which were discussed and applied in the Movant's Motion:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id*. at 1286. As the Movant notes, "the *Sonnax* decision has been cited with approval in the Eighth Circuit as additional authority." Motion, ¶ 20 (citing *In re Blan*, 237 at 739-40).

26. In a request for stay relief, the moving party bears the initial burden to demonstrate that cause exists for lifting the stay, using the *Sonnax* Factors, and the court may deny the motion if the movant fails to make an initial showing of cause. *See Sonnax*, 907 F.2d at 1285. Further, the cause demonstrated must be "good cause." *Morgan Guar.Trust Co. v. Hellenic Lines, Ltd*., 38 B.R. 987, 998 (S.D.N.Y. 1984).

27. The movant's burden is especially heavy if it is an unsecured creditor. "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *see also In re Motors Liquidation Co*., Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010).

28. The application of the *Sonnax* Factors clearly indicates that granting relief from the automatic stay would be inappropriate in this case.[3] Thus, the Motion should be denied.

    *i.    Whether Relief Would Result in a Partial or Complete Resolution of the Issues (Sonnax Factor No. 1).*

29. The first *Sonnax* Factor does not support relief from the stay because lifting the stay would not result in resolution of the issues. If the stay were lifted, the Civil Suit would still have to be litigated against the Debtor-Defendant. The Civil Suit is not trial ready. While the Debtor-Defendant has answered the Complaint, discovery has not even been completed and no depositions have been taken. Litigating the Civil Suit to completion would require the Debtor-Defendant to potentially draft a motion for dismissal and/or summary judgment, present oral arguments and, if summary judgment is not granted, complete written discovery, depositions, possibly engage expert

---

[3] *Sonnax* Factors numbers 3, 8, and 9 are not applicable to the facts here.

witnesses, and prepare for and conduct a jury trial. Further, if the Movant's claim does not exceed the unexhausted SIR under the Caring Communities Policy, such judgment would merely entitle Movant to a general unsecured claim to be paid proportionally with other similar claims in accordance with the terms of a confirmed chapter 11 plan.

> ii. *The Lifting of the Automatic Stay is Connected to and Will Interfere with the Debtors' Chapter 11 Cases (Sonnax Factor No. 2) and Litigation of the Civil Suit in Another Forum Would Prejudice the Interests of Other Creditors (Sonnax Factor No. 7).*

30. The second and seventh *Sonnax* Factors militate against providing the Movant with relief from the automatic stay because allowing the Civil Suit to proceed against the Debtor-Defendant at this juncture in the chapter 11 cases would not only deplete estate resources, thereby prejudicing other creditors, but could also expose the Debtors to have to defend many other lift stay motions. To grant a general unsecured creditor, such as the Movant, relief from the automatic stay to liquidate its claims where there is no (i) articulated need to immediately liquidate such creditor's general unsecured claim, or (ii) compelling reason why the processing of its claims should be treated any differently than other general unsecured creditors of the Debtors, would set a precedent that could result in additional motions for such relief by similarly situated creditors. This would impose a heavy burden on the Debtors' valuable time and scarce resources and would result in a wholly unnecessary distraction to the Debtors' focus on achieving the objectives of these chapter 11 cases—the maximization of value for creditors, especially when the Debtors' insurer, Caring Communities, has no duty to defend against the Movant's claim.

31. Moreover, permitting the Civil Suit to proceed would prejudice other similar creditors. Likely, each of the many litigants in stayed lawsuits against the Debtors would prefer to liquidate their claims through their pending lawsuits. However, liquidation of these claims can and should be done in this Court as part of an organized claims resolution process absent special

circumstances which do not exist here. Requiring the Debtors to defend the Civil Suit in another forum would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); s*ee also Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 390, 143 S. Ct. 1689, 1697, 216 L. Ed. 2d 342 (2023) (discussing the importance of a centralized process and stating: "The automatic-stay requirement, for example, keeps creditors from 'dismember[ing]' the estate while the bankruptcy case proceeds.") (internal citations omitted). A successful case is in the interests of all of the Debtors' creditors and diverting the attention of the Debtors and their employees could have a detrimental effect on the Debtors' restructuring efforts.

32. Therefore, for the above reasons, the second and seventh *Sonnax* Factors weigh heavily against lifting the stay.

> iii. *No Specialized Tribunal Has Been Established to Hear the Actions (Sonnax Factor No. 4).*

33. The fourth *Sonnax* Factor does not support relief from the stay. Movant provides no evidence for its argument that her claims should be resolved in Illinois state court. The Illinois court where the Civil Suit is pending does not have any particularized expertise that this Court does not have. While the Illinois court may be more familiar with the facts and procedural history in the Civil Suit, the same could be said for the courts in which every prepetition lawsuit pending against the Debtors was originally filed. Notwithstanding this reality, the Bankruptcy Code specifically contemplates resolving prepetition claims against the Debtors via a centralized claims resolution process shepherded by the bankruptcy courts. Indeed, as noted in *In re General Motors Corp.*, "[b]ankruptcy litigation is typically as efficient or more efficient than litigation in the district courts in connection with plenary litigation." Hr'g Tr. 41:18 – 20 (Nov. 5, 2009), *In re*

*Motors Liquidation Company f/k/a General Motors Corp.*, Chapter 11 Case No. 09-50026 (REG) (denying motion to lift stay because *Sonnax* Factors weight against lifting the stay). Other courts have recognized that bankruptcy courts have authority to interpret and apply state law in resolving claims through the bankruptcy process. *See, e.g.*, *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("[t]his Court has significant experience in applying state law . . . .."). Movant's claims are no exception—this Court has the authority to adjudicate and render judgment on such claims. Accordingly, the fourth *Sonnax* Factor weighs in favor of denying relief from the automatic stay.

    iv. *No Insurer Has Assumed Responsibility for the Civil Action (Sonnax Factor No. 5).*

  34. The Movant's unsupported belief that the Debtors have insurance coverage for the Movant's claim is simply inaccurate. *See* Motion, ¶ 7. While the Caring Communities Policy may potentially provide coverage for the Movant's claim against the Debtor-Defendant, that policy includes an SIR, which is currently unexhausted in the amount of approximately $200,000. If a judgment awarded to the Movant is less than $200,000, any amounts awarded to the Movant will be born solely by the Debtors' estates.

  35. As discussed, Caring Communities has no duty to defend or provide indemnification against the Movant's claims under the Caring Communities Policy. Moreover, despite the Movant's assertions to the contrary, Caring Communities has not volunteered to provide for a defense or otherwise furnished a defense against the Movant's claims to date.

  36. Further, even if a judgment awarded to the Movant exceeds the unexhausted SIR totaling $200,000, the Debtors will be required to pay their legal defense fees and costs out-of-pocket until the SIR is exhausted and then may seek reimbursement from Caring Communities for

costs and any judgment above the SIR.[4] Thus, for the foregoing reasons the fifth *Sonnax* Factor weighs against granting relief from the automatic stay.

        v.        *The Actions do not Primarily Involve Third Parties (Sonnax Factor No. 6).*

37. The sixth *Sonnax* Factor does not support the relief sought in the Motion. The only named defendant in the Civil Suit is the Debtor-Defendant. As a result, the Debtors are required to actively participate in the Civil Suit in order to avoid facing adverse judgments and, accordingly, the fourth *Sonnax* Factor weighs against granting relief from the automatic stay.

        vi.        *The Interests of Judicial Economy and Economical Resolution of the Civil Suit Are Best Served by Maintaining the Automatic Stay and the Civil Suit is Not Ready for Trial (Sonnax Factor Nos. 10 and 11).*

38. The Civil Suit is not yet ready for trial. As set forth above, discovery in the Civil Suit has not yet concluded and no depositions have been taken. Moreover, no dispositive motions have been filed in that case. Accordingly, the Illinois state court in which the Civil Suit is pending has not expended significant judicial resources and has not even entered an order setting a trial date. *See Bally*, 402 B.R. at 624 (denying stay relief where the parties had not started conducting extensive discovery and were not ready for trial).

39. To the contrary, as discussed, the interests of judicial economy and the economical resolution of litigation would best be served by resolving the Movant's claim against the Debtor-Defendant through the uniform bankruptcy claims process, particularly in these large, complex

---

[4] The Debtors recognize that their failure to pay the SIR does not relieve Caring Communities from its obligations under the Caring Communities Policy. *See* 215 Ill. Comp. Stat. Ann. 5/388 ("No policy of insurance against liability or indemnity for loss or damage to any person other than the insured, or to the property of any person other than the insured, for which any insured is liable, shall be issued or delivered in this State after July 1, 1937, by any company subject to this Article unless it contains in substance a provision that the insolvency or bankruptcy of the insured shall not release the company from the payment of damages for injuries sustained or death resulting therefrom, or loss occasioned during the term of such policy."); *Home Insurance Co. v. Hooper*, 294 Ill.App.3d 626, 633 (1st Dist. 1998) (failure of a bankrupt insured to satisfy the SIR does not relieve the insurer of the obligation to pay claims under the policy). However, Caring Communities obligations are limited to reimbursement of liabilities and defense costs above the SIR in this case. Thus, the Debtors must continue to pay defense costs with respect to the Civil Suit until the SIR is met in this case.

chapter 11 cases where a debtor has hundreds of potential claimants and over 50 pending actions against it. Accordingly, the tenth and eleventh *Sonnax* Factors weigh in favor of denying the stay relief in each case.

> vii. *The Balance of Harms Favors Maintaining the Automatic Stay (Sonnax Factor No. 12).*

40. The final *Sonnax* Factor, the balance of the harms, weighs heavily in favor of maintaining the stay. Contrary to the Movant's assertions (*see* Motion ¶ 20), the Debtors will be severely prejudiced if the automatic stay is lifted and the Civil Suit is permitted to proceed.

41. The Movant argues that the Debtors will not be prejudiced because "Movant's recovery against Defendant-Debtor[ ], or any other Debtor would be first limited to the Defendant-Debtor's applicable insurance policies before filing an amended claim in the Debtor's Bankruptcy Estate to the extent that any judgment exceeds Defendant-Debtor's, or any other Debtor's, applicable insurance coverage." Motion, ¶ 30. However, as set forth herein, no other party, including Caring Communities, has agreed to furnish a defense for the Debtors. Thus, if the automatic stay were to be lifted, the Debtors would be forced to choose between defending the Civil Suit, which would only potentially result in a general unsecured claim due to the Debtors' SIR, and allowing the Civil Suit to go forward without a defense, risking the entry of a potentially large default judgment.

42. The Movant does not provide any evidence that she will suffer any prejudice if the stay is not immediately lifted other than referring to the delay in her ability to liquidate her claim. However, all other similarly situated unsecured creditors are also delayed in liquidating their claims during bankruptcy. Establishing a precedent for lifting the automatic stay at this point would inevitably lead to additional relief from stay motions seeking to proceed with prepetition litigation. Such relief from stay motions would unnecessarily distract the Debtors' management

14

and professionals from the primary task at hand of a successful rehabilitation of the Debtors' estates. *See, e.g., In re Northwest Airlines Corp.*, No. 05-17930, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 3, 2006) (stating that "[t]o allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and . . . [t]he distraction and expense of defending such litigation would interfere with judicial economy and the Debtors' process of reorganization.") (citing *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990)); *Bally*, 402 B.R. at 623 ("allowing the actions to proceed would distract the Debtors' management from the bankruptcy proceeding . . . thereby affecting the interests of other creditors."). During the pendency of the Debtors' chapter 11 cases, the limited resources of the Debtors' estates are much better spent on the Debtors' restructuring efforts, rather than litigating prepetition actions in state courts. Forcing the Debtors to litigate the Civil Suit, as discussed above, would distract the Debtors from and hinder their reorganization efforts and negate the important "breathing spell" necessary to allow them to restructure and preserve the value of their assets for the benefit of all creditors.

43. The balance of the harms clearly favors maintaining the automatic stay with respect to the Civil Suit.

## **CONCLUSION**

44. Based on the weight of settled authority and its application to the Motion as described above, the Debtors respectfully submit that the Movant has failed to meet its burden. Substantially all of the applicable *Sonnax* Factors weigh heavily in favor of maintaining the automatic stay. As such, the Court should deny the Motion.

**WHEREFORE**, the Debtors request that the Court enter an Order denying the Motion and grant such other relief as the Court deems proper.

*[Remainder of page left intentionally blank]*

Dated: September 4, 2024
St. Louis, Missouri

Respectfully submitted,

**DENTONS US LLP**

*/s/ Stephen O'Brien*

Stephen O'Brien
MoBar # 43977
**DENTONS US LLP**
211 N Broadway Ste 3000
St. Louis, MO 63102
Telephone: (314) 241-1800
stephen.obrien@dentons.com

Robert E. Richards (admitted *pro hac vice*)
Samantha Ruben (admitted *pro hac vice*)
Elysa Chew (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive, Suite 5900
Chicago, Illinois  60606-6404
Telephone: (312) 876-8000
robert.richards@dentons.com
samantha.ruben@dentons.com
elysa.chew@dentons.com

– and –

David A. Sosne
MoBar # 28365
**SUMMERS COMPTON WELLS LLC**
903 South Lindbergh Blvd., Suite 200
St. Louis, Missouri 63131
Telephone: (314) 991-4999
dsosne@scw.law

*Co-Counsel to the Debtors and Debtors-in-Possession*

**EXHIBIT A**

**Caring Communities Policy**