UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**MIDWEST CHRISTIAN VILLAGES, INC.** *et al.*,[1]<br><br>**Debtors.** | Chapter 11<br><br>Case No. 24-42473-659<br><br>**(Jointly Administered)**<br><br>Hearing Date: November 6, 2024<br>Hearing Time: 10:00 a.m. (CT)<br>Hearing Location: Courtroom 7 North |

**DEBTORS' MOTION PURSUANT TO
11 U.S.C. § 1121(d) TO EXTEND EXCLUSIVE PERIODS**

The above-captioned debtors and debtors-in-possession (the "Debtors"), by and through their counsel, respectfully state as follows in support of this motion (the "Motion"):

**RELIEF REQUESTED**

1. By this Motion, the Debtors seek entry of an order pursuant to § 1121 of title 11 of the United States Code (the "Bankruptcy Code") extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") and to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing

---

[1] The address of the Debtors headquarters is 2 Cityplace Dr, Suite 200, Saint Louis, MO 63141-7390. The last four digits of the Debtors' federal tax identification numbers are: (i) Midwest Christian Villages, Inc. [5009], (ii) Hickory Point Christian Village, Inc. [7659], (iii) Lewis Memorial Christian Village [3104], (iv) Senior Care Pharmacy Services, LLC [1176], (v) New Horizons PACE MO, LLC [4745], (vi) Risen Son Christian Village [9738], (vii) Spring River Christian Village, Inc. [1462], (viii) Christian Homes, Inc. [1562], (ix) Crown Point Christian Village, Inc. [4614], (x) Hoosier Christian Village, Inc. [3749], (xi) Johnson Christian Village Care Center, LLC [8262], (xii) River Birch Christian Village, LLC [7232], (xiii) Washington Village Estates, LLC [9088], (xiv) Christian Horizons Living, LLC [4871], (xv) Wabash Christian Therapy and Medical Clinic, LLC [2894], (xvi) Wabash Christian Village Apartments, LLC [8352],(xvii) Wabash Estates, LLC [8743], (xviii) Safe Haven Hospice, LLC [6886], (xix) Heartland Christian Village, LLC [0196], (xx) Midwest Senior Ministries, Inc. [3401]; (xxi) Shawnee Christian Nursing Center, LLC [0068]; and (xxii) Safe Haven Hospice, LLC [6886].

Period, the "Exclusive Periods") by seventy-five (75) days each, through and including January 27, 2025 and March 29, 2025, respectively.

2. This is the Debtors' first request for an extension of the Exclusive Periods as these chapter 11 cases have been pending for only a few months. Earlier this month, the Debtors selected certain stalking horse bidders. *See Notice of Proposed Stalking Horse Bidders and Stalking Horse Asset Purchase Agreements* [Docket No. 393] (the "Notice of Stalking Horse Bidders"). The sale and marketing process is ongoing, and the Debtors are targeting an auction date of November 12, 2024. As demonstrated further below, granting an extension of the Exclusive Periods will help progress these cases and allow the Debtors to focus on completing their ongoing marketing and sale process and closing going concern sales of their facilities. Additionally, UMB Bank, N.A. (as successor bond trustee, successor master trustee, and DIP Lender) and the Official Committee of Unsecured Creditors have agreed to support the extension of the Exclusive Periods. Accordingly, the Debtors request the Court extend the Exclusive Periods by seventy-five (75) days.

## BACKGROUND

3. On July 16, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court").

4. The Debtors continue in the operation and management of their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") on August 8, 2024 [Docket No. 121].

5. A detailed description of the Debtors' businesses and the events leading up to the filing of these chapter 11 cases can be found in the *Declaration of Kathleen (Kate) Bertram in*

2

*Support of the Debtors' Chapter 11 Petition and First Day Motions* [Docket No. 3], incorporated by reference herein.

6. The Debtors filed these chapter 11 cases to pursue one or more going concern sales and/or going concern affiliations for each of their facilities.

7. As further described in the Notice of Stalking Horse Bidders, the Debtors selected Ambassador Healthcare LLC, CH Arcadia Holdco, LLC, RNG BEH CN CL MG LLC, and Ocean Healthcare Services LLC and Erez Senior Living, LLC as Stalking Horse Bidders for certain of the Debtors' facilities.

8. The Auction to consider submitted Qualified Bids and Qualified APAs is currently scheduled for November 12, 2024.

## JURISDICTION AND VENUE

9. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

10. The statutory predicate for the relief sought herein is § 1121(d) of the Bankruptcy Code.

## BASIS FOR RELIEF

**A.     Exclusive Periods May be Extended for Cause.**

11. Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).

12. The Bankruptcy Code neither defines the term "cause" for purposes of § 1121(d) nor establishes formal criteria for an extension. The legislative history of § 1121 of the Bankruptcy Code indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 23132 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forest Assoc., Ltd.,* 808 F.2d 363, 372 (5th Cir. 1987) ("Any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp., Ch.* 11 Case No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization.").

13. The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case. *In re Adelphia Commc'ns Corp.,* 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *see also In re Hoffinger Indus., Inc.,* 292 B.R. 639, 643-44 (B.A.P. 8th Cir. 2003) (identifying the *Adelphia* factors as factors to consider in determining whether cause exists to extend exclusivity); *In re New Millennium Mgmt., LLC,* No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (same); *In re Friedman's, Inc.,* 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005) (same); *In re Express One Int'l, Inc.,* 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same); *In re Washington-St. Tammany Elec. Co-op., Inc.,* 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests with the discretion of the Court").

14. These non-exclusive factors include:

    a. the size and complexity of the debtor's case;

    b. the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

    c. the existence of good faith progress towards reorganization;

    d. the fact that the debtor is paying its bills as they become due;

    e. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    f. whether the debtor has made progress in negotiations with its creditors;

    g. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

    h. whether an unresolved contingency exists.

*See, e.g., Millennium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that the debtor established cause to extend exclusivity).

15. Not all factors are relevant to every case, and courts tend to use a relevant subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g., Hoffinger Indus.*, 292 B.R. at 644 ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Wisconsin Barge Line, Inc.*, 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987) (finding cause to extend exclusivity where the cases were large and complex and the debtors acted diligently by having on file a plan capable of confirmation); *In re Seri. Merch. Co.*, Inc., 256 B.R. 744, 751-54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the

5

aforementioned factors); *Express One Int'l.,* 194 B.R. at 100 (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.,* 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

16. Moreover, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.,* 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing `a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted); *see also In re Borders Grp., Inc.,* 460 B.R. at 825 (same).

**B.     Cause Exists to Extend Exclusive Periods.**

17. As set forth below, an extension of each of the Exclusive Periods by seventy-five (75) days is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. The requested extension of the Exclusive Periods will enable the Debtors to continue to focus on the marketing process and, ultimately, the closing of one or more transactions. Further, an extension will allow the Debtors to keep their attention on their operations, and given the upcoming general claims bar date of October 15, 2024 allow for an initial review and analysis of claims, which will be relevant to formulating a chapter 11 plan and drafting a substantive disclosure statement. Accordingly, application of the relevant above factors to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable and limited extension of the Exclusive Periods requested herein.

6

18. Since the Petition Date, the Debtors have continued to implement the marketing and sale process including continuing to respond to due diligence inquiries from potential bidders and site visits by those potential bidders as well as negotiate various stalking horse transaction documents. As described in the Notice of Stalking Horse Bidders, the Debtors selected certain stalking horse bidders for the sale of substantially all of their assets. The sale and marketing process is ongoing, and the Debtors are targeting an auction date of November 12, 2024 to consider submitted Qualified Bids and Qualified APAs. As demonstrated further below, granting an extension of the Exclusive Periods will help progress these cases and allow the Debtors to focus on completing their ongoing marketing and sale process and closing a going concern sale of their facilities.

19. The Debtors have also focused on obtaining first day and final relief from this Court needed to fund and operate their facilities and retain their workforce. Operating in chapter 11 raises additional complications.

20. The Debtors also continue to respond to formal or informal information requests from various parties and their advisors, including, without limitation, the Committee, the Office of the United States Trustee, UMB Bank, N.A., in its capacities as successor master trustee, successor bond trustee and DIP lender (referred to collectively in such capacities as "UMB"), and various other creditors.

21. The Exclusive Periods established by Congress were incorporated into the Bankruptcy Code to afford a full and fair opportunity for a debtor to propose a chapter 11 plan and solicit acceptances of such plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans. The Debtors are seeking an early

7

extension of the Exclusive Periods in order to ensure that their focus remains on maximizing the value of their estates through the marketing and sale process.

22. The facts in these cases are more than sufficient to support a finding of "cause" to extend the Exclusive Periods. Therefore, it is appropriate for the Court to extend the Exclusive Periods for a brief period to allow the Debtors to be given a full and fair opportunity to continue their good faith efforts to market and sell their business as a going concern, without the risk of distraction of any competing plan proposals, and the relief requested herein should be granted.

23. Additionally, UMB and the Committee have agreed to support the extension of the Exclusive Periods.

24. For the foregoing reasons, an extension of the Exclusive Periods is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Court should extend the Exclusive Periods.

## RESERVATION OF RIGHTS

25. Nothing contained herein is intended to be or shall be deemed to waive the right to seek a further extension of the Debtors' exclusive periods for cause shown or other relief.

## NO PREVIOUS REQUEST

26. No previous application for the relief sought herein has been made to this or any other Court.

## NOTICE

27. This Motion and notice of this Motion will be served respectively on Master Service List, Master Notice List. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-3(A)(1). The Debtors submit that, under the circumstances, no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request entry of an order extending the Exclusive Filing Period by seventy-five (75) days through and including January 27, 2025 and extending the Exclusive Solicitation Period by seventy-five (75) days through and including March 29, 2025, together with such other and further relief as the Court deems just and proper.

[*Remainder of page left intentionally blank*]

Dated: October 15, 2024
St. Louis, Missouri

Respectfully submitted,

**DENTONS US LLP**

*/s/ Stephen O'Brien*

Stephen O'Brien
MoBar # 43977
**DENTONS US LLP**
211 N Broadway Ste 3000
St. Louis, MO 63102
Telephone: (314) 241-1800
stephen.obrien@dentons.com

Robert E. Richards (admitted *pro hac vice*)
Samantha Ruben (admitted *pro hac vice*)
**DENTONS US LLP**
233 S. Wacker Drive, Suite 5900
Chicago, Illinois  60606-6404
Telephone: (312) 876-8000
robert.richards@dentons.com
samantha.ruben@dentons.com

– and –

David A. Sosne
MoBar # 28365
**SUMMERS COMPTON WELLS LLC**
903 South Lindbergh Blvd., Suite 200
St. Louis, Missouri 63131
Telephone: (314) 991-4999
dsosne@scw.law

*Co-Counsel to the Debtors and Debtors-in-Possession*